Statement of the Case.
MONROE, J.
Plaintiff, a Mississippi corporation, sues Mrs. J. I-I. Hinton and the Camp & Hinton Company, the first named, as maker, and the last named, as payee and indorser, of two promissory notes, alleging that both defendants are domiciled in Lamar county, Miss. The notes, which are annexed to the petition, differ from each other only as to the amounts and time allowed for payment and in the fact that one of them has a credit of $800 indorsed upon the back of it. The one reads as follows:
“9,036.65. Lumberton, Miss., Sept. 7, 1907.
“Thirty days after date, I, we, or either of us, promise to pay to the order of Camp & Hinton Co., ninety six hundred, thirty six, 65/100, dollars, for value received, with interest at the rate of 8% per annum, after maturity, until paid. And, in the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection, an additional amount of ten per cent shall be added to the same as attorney’s fees. The drawers and indorsers, severally, waive demand for payment, protest and notice of non payment of this note. Negotiable and payable at the First National Bank of Lumberton, Miss.
“No. 5,429. Due Oct. 1/10.
“[Signed] Mrs. J. H. Hinton.
“Address.”
Oh reverse of note:
“Nov. 9. By cash, $800.”
“Camp & Hinton Co.,
“[Signed] J. I-I. Hinton, President.”
The other note is for $9,700.77, and is made payable in 60 days. The petition alleges:
“That petitioner acquired the said notes from Camp & Hinton Company for full, adequate consideration, before maturity. * * * That, by reason of the laws of Mississippi, where said parties, maker and payee of said notes had their domicile at the time, and where said notes were made and to be paid, the maker, the said Mrs. J. H. Hinton, wife of said J. IT. Hinton, is separate in property from her said husband.”
And she has the same power to contract and to bind herself and her property as though she were unmarried. That she is temporarily abiding in New Orleans. That the notes are past due and unpaid, and that demand for payment has been made in vain.
*1021 The Camp & Hinton Company allowed judgment to he rendered against it by default. Mrs. Hinton, joined by her hdsband, interposed certain exceptions,’ which were abandoned when called for trial, and they answered, in substance, as follows: They admit the signatures to the notes sued on. They deny that they are domiciled in Lamar county, Miss., or were there domiciled on September 7, 1907, and allege that they are citizens of Louisiana and have resided in New Orleans for more than four years last past. They allege that Camp & Hinton Company is a Mississippi corporation, of which .J. H. Hinton is president, and in which he owns all the stock, save three shares, which are held by others in order that the law providing for the establishment of corporations may be complied with, and that .said Camp & Hinton Company is therefore his (J. H. Hinton’s) “own private, individual business, in the form of a corporation, of which fact plaintiff had full knowledge prior to the ■execution of the notes * * * ”; that she (Mrs. Hinton) “was induced to Sign the notes at the representations of said bank and at the request and instigation of her said husband for the purpose of binding herself and her paraphernal property for the payment of her husband’s debts and obligations; that she was not benefited nor was her paraphernal property benefited, nor' was it intended that she should be benefited by the execution of said notes, but, on the contrary, she, in ignorance of her rights under the law, was induced so to execute the same, all in violation of the prohibitory law of this state, where she and her husband were domiciled at the time, and under whose jurisdiction ■she was accorded the protection afforded by its laws; that said notes were never negotiated from the time of their execution, but were by preconcerted arrangement discounted by her said husband to the said First National Bank, “and your respondent, Mrs. J. H. Hinton, avers that the said notes as to her are illegal, null, and void, contrary to the public policy of this state, and should be so decreed. Further answering, and in the event that this court should hold, after trial, that, although your respondent and her said husband have lived continuously in this state for more than four years last past, they were not citizens of the' state of Louisiana on the 7th of September, 1907, then, in the alternative, and without waiving the defense first set forth, your respondent represents that under the laws of the state of Mississippi, and particularly section 4001 of the Code of Mississippi of 1906, said notes were by her signed, used, and executed with all want of lawful consideration, to the. knowledge of said plaintiff bank.” We find the following to be the facts disclosed by the evidence adduced on the trial, to wit:
Prior to September, 1907, J. H. Hinton had been living with his family for 15 years at a home established by' him at Lumberton, Miss., where the Camp & Hinton Company, of which he was president, owned and operated an extensive plant. The capital of the company was $300,000, divided into shares of $100 each, and Hinton owned all the shares save four, but the extent of his interest was not known to the officers of the plaintiff bank with which the lumber company had been doing business since 1901. In the fall of 1903 Mr. Hinton rented a house in .New Orleans and brought his family here, and the following year he built a residence (which is said to belong to Mrs. Hinton), in which he and his family have since resided during the winter months, whilst his daughters are pursuing their studies at the H. Sophie Newcomb College, in this city. He also about that time established an office here and a lumber yard as adjuncts to his Lumberton business, and either then or later he and his family connected themselves with one of the city churches, and he became a *1023 member of one of the city • clubs. He has, however, always maintained his residence and principal business at Lumberton, and he and his family have returned there every year in the spring after the commencements at the Newcomb College, unless they have visited Mrs. Hinton’s parents, or father, at McComb City, Miss., or have traveled, for pleasure or business, in the North. There is no evidence in the record to justify the belief that in- coming to New Orleans Mr. Hinton intended to abandon his domicile in Lumberton, or to establish his domicile here. To the contrary, it is shown that he has always been regarded as a citizen of Mississippi, and of Lumberton, that he has paid -his poll tax and has been a registered voter there at least since April, 1904, and that on June 26, 1906, in view of a primary election, which was about to be held, he took the oath (required by law, to enable him to vote) that he was a citizen of the United States, and that he had resided in the state of Mississippi for two years, and in the county and precinct in which he desired to be registered for one year next preceding that date. On Sejrtember 7, 1907, Mr. Hinton, as president of the Camp & Hinton Company, applied to plaintiff for a loan of $3,500, saying that he needed the money to meet the company’s pay rolls. It appears, however, that the bank had shortly before that credited the company’s account with certain checks, amounting to $10,000 or $12,000, drawn by the company on the First National Bank of Gulfport, which checks had been returned unpaid, thereby swelling the debit side of its account to over $19,000, and the president of the bank told Mr. Hinton that the bank could not extend any further credit to the company until the existing indebtedness should have been liquidated. Mr. Hinton explained that the company would have to shut down its sawmill unless it ,could obtain the $3,500 with which to pay its employes, and that such action would be disastrous to its interests, and it was then agreed that Mrs. Hinton, who was known to have means of her own, could take up the company’s account with the bank by giving the two notes here sued on. Mr. Hinton then left the bank. The notes were drawn up by an officer of the bank, in accordance with the agreement, and were sent by the bank to Mrs. Hinton and to Mr. Hinton, as president of the Camp ,& Hinton Company, to be signed and indorsed, and, upon being returned so signed and indorsed, were taken as settling the existing debt of the company, and thereupon the $3,-500 for which the company had applied was loaned to it. There was judgment in the district court in favor of defendant, rejecting plaintiff’s demand, at its cost, with reservation of its right of action against defendant, ex aequo et bono, for $3,500, advanced by plaintiff to Camp & Hinton Company on the faith of plaintiff’s notes, herein sued on, with interest, * * * if the same shall not have been paid by said company.” Plaintiff has appealed, and defendant has answered, praying that the reservation be not allowed.
Opinion.
1. The question of domicile is one of intention as well as of fact, and where, as in this ease, it appears that a domicile has been acquired in another state, the parties seeking to show that it has been changed to this state must overcome the legal presumption that it has not been changed by positive and satisfactory proof of the establishment of a domicile here as a matter of fact with the intention of remaining here and of abandoning the former domicile. Cole v. Lucas, 2 La. Ann. 950; Succession of Franklin, 7 La. Ann. 408; Hymen v. Schlenker, 44 La. Ann. 116, 10 South. 623; Succession of Simmons, 109 La. 1095, 34 South. 101; Marks v. Bank, 110 La. 666, 34 South. 725; Ballard v. Puleston, 113 La. 239, 36 South. 951. The most that *1025 can be said of the proof in this case is that it shows that Mr. Hinton provided his family with two places of residence, and that since 1903 they have spent more of their time at the one place than at the other. There is absolutely nothing to show that in so doing it was his intention to abandon the “domicile” that he had acquired in Mississippi, or in the legal acceptation of the term, to acquire “a domicile” in Louisiana. And Mrs. Hinton has no other domicile than that of her husband. Rev. Civ. Code, arts. 39, 120; Birmingham v. O’Neil, 116 La. 1085, 41 South. 323.
2. The contract sued on having been entered into in Mississippi, to be executed there by parties who were subject to laws of that state, their rights are to be determined and enforced in accordance with the lex loci contractus, unless to do so would be to contravene some rule of public order or morals or some law of this state applicable to all persons litigating in its courts. The Louisiana law imposing disabilities upon married women with respect to the incurring of personal obligations has, however, no application to a married woman domiciled elsewhere, and entering into a contract to be executed in the state of her domicile.
Under the law of Mississippi (Code 1906, § 2517, which has been offered in evidence) a married 'woman may bind herself and her property as though she were not married. And, under the jurisprudence of this court, as -she binds herself there she will be held here. Marks v. Bank, 110 La. 662, 34 South. 725.
The Mississippi Code also contains a section reading in part as follows:
“Sec. 4001. * * * All promissory notes and other writings for the payment of money, or things, may be assigned by indorsement, whether the same be payable to order or assigns or not, and the assignee or indorsee may maintain such action thereon, in his own name, as the assignor or indorser could have maintained, and, in all actions on such assigned promissory notes, * * * the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payment, sets off and discounts, made, had, or possessed, against the same, previously to notice of assignment, in the same manner as though the suit'had been brought by the payee,” etc.
One of the purposes of this statute seems to have been to take “promissory notes and other writings for the payment of money” out of the old common-law rule that the assignee of a chose in action has no standing to sue thereon in his own name. Another purpose has been held by the Supreme Court of Mississippi to have been to allow a party to such an instrument when sued thereon by one who acquired it through assignment or indorsement to set up, by way of defense, “want of lawful consideration, failure of consideration, payment, discounts, and sets-off.” It has been held by the learned court referred to that the statute does not apply in the case of an instrument made payable to bearer, or to the order of the maker, or drawer, and by him indorsed in blank. Craig v. Vicksburg, 31 Miss. 216; Meggett v. Baum, 57 Miss. 26; Bank v. Wofford, 71 Miss. 712, 14 South. 262. In Millsaps v. Bank, 71 Miss. 363, 377, 13 South. 903, 908, it was contended on behalf of plaintiff that the statute did not apply in the case of a note made by one person, payable to the order of another, and by the latter indorsed in blank and negotiated, as thus indorsed, where it was in the contemplation of the parties at the time it was made that it should be immediately negotiated. But the court said:
“Something more is needed to take the note from under the operation of our anti-commercial statute than a mere purpose that it shall be negotiated by the payee when executed. There must be a sinister design, creating an equitableestoppel. Mere knowledge that the payee will immediately discount, or even an intent that he shall do so, does not constitute such an estoppel.”
The court, however, in concluding its opinion proceeded to differentiate the case then *1027 under consideration from a case such as the one with which we are now dealing, saying:
“The case of Hawkins v. Neal, 60 Miss. 256, does not militate against this view. There the note was accommodation paper. It was given as such, the maker well knowing at the time that there was no consideration for it as between himself and the payee, intending that it should be negotiated in the absence of such a consideration. It is well settled that paper of this class, well known in the commercial law and in the world of business, is nothin fact, executed until it is delivered to the discounter or purchaser, and that his purchase constitutes the consideration. The cases are not alike for that reason. Tilden v. Blair, 21 Wall. 241, 22 L. Ed. 632.”
The instant case falls rather within the rule (as thus stated) of Hawkins v. Neal than of that laid down in Millsaps v. Bank. The testimony of the defendant now before the court in regard to the transaction out of which this litigation has arisen is very brief. She says that she signed the notes sued on at the request of her husband; that she received no benefit from tbe bank or from the Camp & Hinton Company; that she knew nothing of her husband’s private affairs, save that he is the president of the Camp & Hinton Company. Being asked: “What knowledge had you of his standing with the First National Bank of Lumberton at the time you signed the notes,” she answered: “I knew nothing of that. I only signed them because he asked me to do so.” She does not say that she was not informed, or that she did not know, that the Camp & Hinton Company owed the amount for which the notes were given to the bank. Nor does sbe deny that, though given at her husband’s request and in ignorance of bis standing with the bank, the notes were given to liquidate and settle the debt due by tbe Camp & Hinton Company to tbe bank, and thereby enable the company to obtain the additional sum of $3,500, without which it would have been compelled to close its business. And that she was so informed, and that the notes were given for that purpose, may, we think, reasonably be inferred from tbe averments of the answer filed by her, to the effect that the business of the Camp & Hinton Company was the business of her husband, and “that she was induced to sign the notes at the representation of said bank and at tbe request and instigation of her said husband for the purpose of binding herself and her paraphernal property for the payments of her husband’s debts and obligations.” The president of the hank says in his testimony:
“The consideration for which the notes were given was the account the Camp & Hinton Company owed to the bank. There was no consideration contemplated for the notes as between the Camp & Hinton Company and Mrs. Hinton. She did not give the notes to the Camp & Hinton Company. They were made for the bank, and made in that form so the bank could hold the company as indorser thereon if Mrs. Hinton should default on them at maturity.”
That the purpose thus referred to was accomplished is established by wholly uncontradicted testimony. That is to say, it is shown that, when the notes were returned to it with defendant’s signature thereon and with the indorsement of the Camp & Hinton Company, the bank “closed the company’s account and accepted the two notes, as signed and indorsed, in the place of the closed account,” and “thereupon carried out its promise to advance or loan the company the $3,500, secured as agreed upon.” Regarded, therefore, as a transaction between defendant and the bank (and, in view of the allegations of the answer and of the evidence adduced, it must be so regarded), there was no lack of consideration. Sadler v. Hoover, 31 Miss. 260; Wren v. Hoffman, 41 Miss. 616; Meggett v. Baum, 57 Miss. 26; Violett v. Patton, 5 Cranch. 142, 3 L. Ed. 61; Hendrick v. Lindsey, 93 U. S. 148, 23 L. Ed. 855; Ken-worthy v. Sawyer, 125 Mass. 29; Stothart v. Hardie, 110 La. 700, 34 South. 740.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that *1029 there now be judgment in favor of the plaintiff, the First National Bank, and against the defendant, Mrs. J. H. Hinton, in the sum of $9,630.65, with interest thereon at the rate ■of 8 per cent, per annum from October 7, 1907, until paid, subject to a credit of $800 as of date November 9, 1907, and for the further sum of $9,700.77, with interest thereon at the rate of 8 per cent, per annum from November 6, 1907, until paid, and for an additional sum of 10 per cent, on the aggregate amount of principal and interest for which ■said defendant is thus condemned as attorney’s fees. It is further decreed that said defendant pay all costs save those for which the Camp & Hinton Company have heretofore been condemned, and that her rights as against the Camp & Hinton Company with respect thereto be reserved.