318 So.2d 125 (1975)
Raymond A. MIX, Petitioner-Contestant,
v.
John BLANCHARD, Respondent-Contestee, and
Orleans Parish Democratic Executive Committee, Nominal-Respondent.
No. 7299.
Court of Appeal of Louisiana, Fourth Circuit.
September 10, 1975.
Writ Refused September 18, 1975.
*126 James A. McPherson, New Orleans, for plaintiff-appellant.
Okla Jones, II, Anthony W. Skidmore, New Orleans, John Blanchard, in pro per. for John Blanchard, defendant-appellee.
Before SAMUEL, REDMANN, LEMMON, GULOTTA, STOULIG, BOUTALL, SCHOTT and BEER, JJ., and FRANK V. ZACCARIA, J. Pro Tem.
STOULIG, Judge.
Plaintiff, Raymond A. Mix, a candidate for the office of representative from the 93rd Legislative District for the State of Louisiana, has appealed a judgment dismissing his suit challenging the eligibility of respondent John Blanchard, also a candidate for the same office. Plaintiff alleges Blanchard has no "actual domicile" in the 93rd District and therefore fails to meet one of the requisites for candidacy outlined in LSA-Const. Art. 3, § 4(A) (1974), which provides:
"An elector who at the time of qualification as a candidate has attained the age of eighteen years, resided in the state for the preceding two years, and been actually domiciled for the proceeding year in the legislative district from which he seeks election is eligible for membership in the legislature."
Defendant filed qualifying papers giving his domicile as 4105 Melpomene Street, but plaintiff contends his "actual domicile" is 6109 Campus Boulevard (outside the 93rd District).
In support of his claim, plaintiff proved Blanchard:
1. bought a home at 6109 Campus Boulevard in 1969 and his wife (from whom he is neither separated nor divorced) and his three children have continuously lived there since its acquisition;[1]

*127 2. claimed a 1975 Homestead Exemption on the Campus Boulevard property;
3. has a listing in the New Orleans telephone directory at the Campus Boulevard address;
4. has no telephone listing registered in his name at the Melpomene qualifying address;
5. lists his "home address" as 6109 Campus Boulevard with the Custodian of Notarial Archives for Orleans Parish;
6. has utility meters in his name at the Campus Boulevard address; and
7. has registered at the Campus Boulevard address two automobiles used by his family.
Defendant does not challenge any of these proofs; however, he testified that it is his intent to maintain his domicile on Melpomene Street until the day he dies. He was born in this house and lived there until he left the New Orleans area for Chicago in the early 1960s. When he returned in 1966, he declared he reestablished his domicile with his wife and children on Melpomene Street and has voted continuously in this district since that time. When he moved his family to Campus Boulevard in 1969, he testified he left furniture at the Melpomene address and has continued to reserve for his personal use two rooms with a private entrance on one side of this double house. He further stated he sleeps in these quarters three or four nights a week and spends weekends "at home" with his family.
Despite defendant's declarations of intent to maintain a lifetime domicile at 4105 Melpomene Street, his actions contradict his self-serving testimony. When the record is considered in its entirety, the evidence is overwhelming that Blanchard maintains his principal establishment on Campus Boulevard. LSA-C.C. art. 38 defines domicile this way:
Despite defendant's declarations of intent to maintain a lifetime domicile at 4105 Melpomene Street, his actions contradict his self-serving testimony. When the record is considered in its entirety, the evidence is overwhelming that Blanchard maintains his principal establishment on Campus Boulevard. LSA-C.C. art. 38 defines domicile this way:
"The domicile of each citizen is in the parish wherein he has his principal establishment.
"The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected."
The quoted article of the Constitution upon which plaintiff bases his challenge uses the terminology "actually domiciled." As we view it, in light of the quoted definition the word actually serves to emphasize the residency aspect of domicile. It is interesting to note the dialogue among the delegates to the Constitutional Convention in drafting this article.[2] It is apparent the *128 delegates intended to limit candidacy for political office to citizens who actually live in the district they aspire to represent. The newly drafted constitutional article was designed to eliminate a system under which candidates would establish a "political domicile" from which to seek office even though they chose to live and maintain their families in another area, and were not truly representative of the district from which they sought election.
In our opinion the evidence clearly preponderates in favor of the factual conclusion that Blanchard's domicile is located at 6109 Campus Boulevard where he maintains his wife and children and sleeps several nights each week. As a corollary to this conclusion we necessarily hold that 4105 Melpomene Street is another residence maintained for political purposes.
For the reasons assigned it is ordered, adjudged and decreed that the judgment of the trial court dismissing the petition of plaintiff-contestant Raymond A. Mix against the candidacy of respondent-contestee John Blanchard and against the defendant Orleans Parish Democratic Executive Committee be reversed.
It is further ordered and decreed that respondent-contestee John Blanchard is hereby declared to be ineligible to be a candidate for election as a member of the House of Representatives of the State of Louisiana representing the 93rd District of the State of Louisiana in the primary and general elections to be held in 1975.
It is further ordered and decreed that the Orleans Parish Democratic Executive Committee be and it is prohibited from certifying respondent-contestee John Blanchard to be qualified as a candidate for election as a member of the House of Representatives of the State of Louisiana representing the 93rd District of the State of Louisiana in the primary and general elections to be held in 1975.
Reversed and rendered.
REDMANN, LEMMON, GULOTTA and BOUTALL, JJ., dissent with written reasons.
MORIAL, J., recused.
LEMMON, Judge (dissenting).
John Blanchard, like his mother before him, was born and raised at 4105-07 Melpomene Street in New Orleans, in a house built by his grandfather with his own hands. Blanchard, and later his wife and three children, lived there until he moved his family to Chicago in 1960.
Blanchard and his family moved back to New Orleans in 1965 and reestablished their domicile at the Melpomene Street family home, where his grandmother was still living. In 1969, because the immediate area had become blighted, Blanchard purchased another house on Campus Boulevard and moved his wife and children into that home. He remained on Melpomene Street, however, keeping two bedrooms for himself (and his oldest daughter, who stayed there with him for two years). He reconverted the remainder of the house into a double house, moving an elderly *129 cousin and her husband into one side (where he used their kitchen and other facilities) and renting out the other side.
As to retained contacts with the Melpomene Street residence, Blanchard testified: He resides principally at Melpomene Street during the week, but regularly spends the weekends with his children on Campus Boulevard, occasionally spending additional time there during the week. He spends "(a)t least three and four nights a week" at Melpomene and goes to night school in the area. His mother and lifelong friends live in the neighborhood, he belongs to neighborhood civic, social and political organizations, his law office is in the legislative district, and he spends most of his time in the area.
On the other hand, he has no contacts with the Campus Boulevard area, except for his wife and children, and he stated he doubts if the neighbors in the area even know him.
A former co-worker in a legal program testified he picked Blanchard up "four or five days a week" for a period of about a year in about 1970 and 1971, and still picks him up there, the frequency not being specified. He also picked him up on Campus Boulevard "a time or two on Mondays". He stated Blanchard opened a program office in the Melpomene neighborhood with the express intention of having it "close to his home."
The determination of "actually domiciled" depends upon the facts and circumstances of each case. The trial judge apparently accepted the uncontradicted testimony of Blanchard and his co-worker and rendered judgment in his favor. The issue for our review is whether under the accepted facts Blanchard fulfilled the domiciliary requirements as a matter of law.
This is not a case of a candidate choosing a favorable district and attempting to establish a domicile there. Blanchard has been domiciled on Melpomene Street for most of his life and simply established a second residence in 1969, while retaining the original domicile. At times unsuspicious of political motives he established a course of conduct which he maintained over the last six years. Thus, after having been undisputedly domiciled at Melpomene Street from 1965 to 1969, his only change was to establish a second residence which the record shows he inhabits regularly only on weekends.
The contestant simply did not bear the burden of proving change of domicile. In fact, the evidence (apparently deemed credible) preponderates in favor of a conclusion that the Melpomene Street residence qualifies as Blanchard's principal establishment within the contemplation of C.C. art. 38, and since he has over a long period of time consistently manifested his intention to retain this establishment as his domicile, the judgment of the trial court should be affirmed.
GULOTTA, Judge (dissenting).
I dissent.
Where a person is "actually domiciled" is a factual determination. It is well settled in our jurisprudence that the burden of proof is upon the contestant to show by positive and satisfactory proof [1] that Blanchard has changed his domicile from the Melpomene Street address to the Campus Boulevard address and that he has not been "actually domiciled" in the legislative *130 district for a year preceding the date he seeks to qualify as a candidate for the legislature from that district. Plaintiff simply failed to successfully carry the burden.
Blanchard testified that he was born and reared at the Melpomene Street address; that he has voted from the Melpomene Street address; that upon his return from Chicago in 1965, he reestablished his residence on Melpomene Street. Plaintiff further testified that although he purchased the Campus Boulevard property, he did not intend, at any time, to change his domicile from Melpomene Street. Additional evidence of Blanchard's actual domicle within the district is that he voted in the 93d District continuously from 1966 until the present and that his driver's license bears the Melpomene Street address.
Of significance also is the uncontroverted testimony of Charles James that on three or four days a week, he picked up Blanchard from the Melpomene Street address for the purpose of driving him to work and continued this pattern for several years. James further testified that he visited Blanchard at the Melpomene Street address on numerous occasions; that he had personal knowledge that Blanchard slept and dressed at that address.
Contrasting the positive testimony of Blanchard and James with the circumstantial and documentary evidence offered by plaintiff, I conclude that plaintiff failed to carry the burden of proof required to disqualify candidate Blanchard. Accordingly, I dissent.
BOUTALL, Judge (dissenting).
I dissent for the reasons expressed by Lemmon, J. The uncontradicted testimony of the contestee and his witness is sufficient to overcome the somewhat circumstantial or indirect documentary evidence and support the decision of the trial judge.
REDMANN, Judge (dissenting).
One in favor; then a four-to-four tie; now five-to-four against. Thus the judicial decisions on John M. Blanchard's eligibility; thus the closeness of the question.
The question has been decided by reversing the rules of C.C. 39. Now the husband's domicile is declared, as a matter of law, to be that of his wife; the father's, that of his minor children. All his desires, his interests in the old neighborhood, his behavior including spending the greater portion of time at his ancestral residence of birth and rearing, are worse than naught: they are a sinister plot to establish a political domicilebut not a domicile.
These theories are not strange to the language of the campaign trial, where perhaps anything goes. They are strange to the ancient and established legal concept of domicile.
Unless it has become impossible, as a matter of law, for a man to retain his domicile of origin while permitting his wife and children to live elsewhere, John M. Blanchard has done so.
For these and the reasons of the other dissents, the district judge's judgment should be affirmed.
NOTES
[1] Clearly 6109 Campus Boulevard is the matrimonial domicile of Mr. and Mrs. Blanchard.
[2] Thomas Casey, a member of the legislative committee, explained to the delegates why the word "domicile" was used rather than "residence." We quote in part: "* * * The concept was advanced, and incidentally was adopted with only one dissenting vote, with the thought in mind that we would hope to avoid abuses by candidates for the legislature who attempt, or who rather actually reside or are legally domiciled in one area of a district or city or state or what have you, and through other means establish a residence in another legislative district. For instance, a person may have his home, have a homestead exemption, rear his children, and actually live in a home in one area of a city or a parish, and then have a business, let's say a barroom, in another area, a different legislative district, and have a cot on the second floor and he might sleep on that cot once a week or twice a week, register to vote in that area where he has his business, and then run for election in that area; in an area where in fact he does not actually live with his family and is not actually domiciled. We have attempted to do this to prevent just that thing. A person who lives with his family in one area could theoretically have many, many residences, five or six, and therefore have the option, through these means, and I feel they could be devious means, to establish other residences merely for the purpose of running in a certain legislative district. That was the whole thinking behind this. * * * The word domicile is really where a person intends to have his main home, to rear his children, to register to vote, where he goes to church, where he associates with many of his friends and neighbors and things of that type, where his children may go to school. Various criteria such as that are things that the court looks at and not just how much time you might happen to spend in a particular residence, if you have more than one residence. * * *" (Emphasis added.)
[1] In re Adoption of Rials, 220 La. 484, 56 So.2d 844 (1951), the Louisiana Supreme Court stated that a party seeking to show a change of domicile must overcome the presumption that it has not been changed by positive and satisfactory proof. In Succession of McElwee, 276 So.2d 391 (La.App., 2d Cir. 1973), the Second Circuit postulated the rule that the burden is upon a party endeavoring to avail himself of a change in domicile to prove the change beyond a reasonable doubt. See Succession of Simmons, 109 La. 1095, 34 So. 101 (1903); Kinder v. Scharff, 125 La. 594, 51 So. 654 (1910);First Nat. Bank v. Hinton, 123 La. 1018, 49 So. 692 (1909); Cannon v. Cannon, 242 So.2d 291 (La.App., 4th Cir. 1970).