DANIEL TREADWELL WALDEN *v.* ROBERT FINLEY CANFIELD and others.

A purchaser who shows a judgment, execution, and sale under which he holds, has a title sufficient to acquire by the prescription of ten and twenty years ; and no infor-malities in the sale can affect his title, where he has possessed under it the time required by law to acquire the property by prescription, before such informalities were set up.

The date of the election or resignation of a Senator of the United States, of the appointment of a member of the President's Cabinet, or of a Foreign Minister, are matters of historical notoriety, which the court will notice though not proved in the record.

One who left the State to discharge the duties of a Senator of the United States, and who, on resigning, was made a member of the President's Cabinet, and subsequently a Foreign Minister, will not be considered as having lost his domicil in this State, where no act has been done evincing any intention to acquire a new domicil '(C. C. 46) ; and prescription will run against him as if actually within the State.

APPEAL from the District Court of the First District, *Buchan-an, J.*

*F. B. Conrad*, and *Hoffman*, for the appellant.

*Roselius* and *G. Strawbridge*, for the defendants.

SIMON, J.   The plaintiff sets up title to the property in dispute under a sheriff's deed, from which it appears that on the 11th of November, 1837, he became the purchaser at a sheriff's sale of the right, title, and interest of the heirs of Edward Livingston in and to the premises in controversy, and in some other property.   The sale was made by virtue of a *pluries fi. fa.*, issued at the suit of Mitchell and Lemoyne against Edward Livingston, for the price of seventeen hundred dollars cash.

The defendants, who are in possession of the premises, and have been so, by themselves and their warrantors, since the month of January, 1827, claim under a title derived from the marshal of the United States for the Eastern District of Louisiana, by whom the property was sold to their author by virtue of a *venditioni ex-ponas* directed to him by the District Court of the United States for the Southern District of New York, at the suit of the United States of America against Edward Livingston.

The defendants having called their authors in warranty, issue was regularly joined by them successively, and after a full inves-tigation of the respective rights of the parties, the District Court

rendered judgment in favor of the defendants; from which, the plaintiff has appealed.

. Several points were raised in the argument of this cause, as growing out of the pleadings and of the evidence adduced by the parties, one of which, the plea of prescription, we have only deemed it necessary to examine. The defendants' author, Jacob R. Wolf, relies mainly on the prescription of ten years.

On this point, the evidence shows that the property in dispute was adjudicated by the marshal of the United States to John W. Smith, on the 11th of January, 1827, and that the defendants, and their authors, have been in possession of it ever since. We find it admitted in the record that a judgment was regularly rendered against Edward Livingston in the District Court of the United States for the Southern District of New York, at the suit of the United States. That a writ of *venditioni exponas* was regularly issued under said judgment, directed to the United States marshal for the Eastern District of Louisiana. That in virtue of said writ the marshal advertised and sold the property in dispute in this suit, in the manner stated in his return. That at the sale John W. Smith, the special agent of the United States, became the purchaser for and on account of the United States. That Smith had full authority from the Treasury Department of the United States to purchase the property; and that Smith afterwards sold the property, under authority to that effect, to Jacob R. Wolf, the last warrantor in this case. It is also admitted, in another part of the record, that Edward Livingston left the State of Louisiana in 1827 or 1828; that he never returned; and that between the date of his departure from Louisiana, and his death, he was successively Senator in Congress, Secretary of State, and Ambassador to France. It is further shown by the probate proceedings relative to the will of Edward Livingston, that he died in the month of May, 1836, in the State of New York, and that after his death, his widow and daughter returned to Louisiana, where they seem to have become residents. The will of the deceased was admitted to probate in the Court of Probates for the parish of New Orleans, his widow was recognized as his sole executrix, and letters testamentary were ordered to be delivered to her according to law, on the 2d of January, 1837.

The prescription under consideration is established by article 3442 of the Civil Code, in these words : " He who acquires an immoveable in good faith and by a just title, prescribes for it in ten years if the real owner reside in the State, and after twenty years if the owner resides out of the State." And according to article 3445, in order to acquire the property of immoveables by this species of prescription, four conditions must concur : 1, good faith on the part of the possessor ; 2, a title which shall be legal, and sufficient to transfer the property ; 3, possession during the time required by law ; and 4, an object which may be acquired by prescription. Now, it is not pretended that the defendants' author was in bad faith ; and, as good faith is always presumed in matters of prescription (Civ. Code, art. 3447) ; and as the thing in dispute, which is the object of the prescription, is susceptible of alienation, and is not one of those of which the alienation is prohibited by law, (art. 3463,) we shall proceed to examine :

*First.* The nature of the title set up by the defendants.

*Second.* Whether the time of possession necessary to acquire the prescription contended for, was sufficiently completed before the institution of this suit.

I. To be able to acquire by the prescription of ten and twenty years, (Civ. Code, art. 3449,) a legal and transferable title of ownership is necessary in the possessor ; this is what is called in law *a just title ;* and a just title, according to the definition given in arts. 3450 and 3451 of our Code, is one which, by its nature, would be sufficient in itself to transfer the property. In this case, the defendants have produced a regular judgment, writ of execution, and a deed of sale from the marshal to their author ; and, under the well-settled and repeatedly established doctrine of our jurisprudence, that in relation to sales under execution, where a purchaser shows a judgment, writ of execution, and sale under which he holds, his title will be considered as legal and valid, (3 La. 476. 5 Ibid. 486. 9 Ibid. 542. 16 Ibid. 454, 547. 18 Ibid. 530. 19 Ibid. 309,) we think that, on this point, the defendants have satisfactorily complied with the requisites of the law ; and that, their title being a just one, that is to say, one which of itself was sufficient to transfer the property in dispute, it is such as can legally serve as the basis of the prescription under consideration.

It is true that the plaintiff has attempted to attack the defendants' original sale, on the ground of informality in the other proceedings of the marshal ; but this, in our opinion, cannot change, or in any way alter the effect of the defendants' title, if they have really possessed under it, during the time required by law to acquire the property by prescription, before the institution of this suit, or in other words, before the alleged informalities were set up against the presumed legality and validity of their title.   As it was sufficient to acquire and transfer the property, it must be sufficient to enable the possessor to prescribe under it.

II. The sale by the marshal took place on the 11th of January, 1827, and it is admitted that Edward Livingston left the State in 1828, and became successively Senator in Congress, Secretary of State, and Ambassador to France.   The present suit was brought on the 11th of April, 1839, so that the defendants have shown a continued and uninterrupted possession of the property during twelve years and three months.   But it has been urged that Edward Livingston was absent from the State since 1828 ; that he never returned ; and that in order to determine the time necessary to acquire the prescription contended for, (the prescription of ten years,) the time of his absence can only benefit the defendants for one-half thereof.   The admission of the parties does not exactly fix the epoch of Edward Livingston's departure from Louisiana, nor the period during which he successively occupied his different offices ; but it is one of those matters of public notoriety, one of those facts which belong to the history of the country, which we feel bound to notice, that E. Livingston was elected to represent Louisiana in the United States Senate on the 12th of January, 1829 ; that he resigned in the spring of 1831 ; that he was then made Secretary of State by President Jackson ; and that he went as Minister to France in 1833.   The question then occurs, could he be considered as an absentee from Louisiana during the time that he occupied those offices ; or, in other words, did he lose the legal domicil he had in Louisiana to acquire one elsewhere ?   It is to be remarked that the origin of his absence proceeded from his having been elected to represent this State in the United States Senate.   Now, art. 46 of the Civil Code says : " A citizen accepting a temporary and precarious office, or one

from which he may be removed at pleasure, retains his ancient domicil, if he has not evinced a contrary intention." This law was borrowed from the Code Nap., art. 106, on which Paillet says: "Ainsi, les ambassadeurs et les envoyés, les consuls du commerce dans les ports où pays étrangers, les préfets, &c., et, en un mot, tous ceux qui se transportent hors du lieu de leur demeure habituelle pour remplir des fonctions dont il y a lieu de croire qu'ils seront déchargés après un certain tems, ou qui peuvent leur être ôtées à la volonté du gouvernement, ne sont point censés renoncer à leur domicile pour l'acquérir dans le lieu où ils doïvent exercer ces fonctions." Duranton, vol. 1. No. 362, says, also : "Pour les fonctions temporaires, telles que celles de député, ou qui sont révocables, comme celles de procureur du roi, préfet, &c., leur acceptation ne forme point une présomption que le fonctionnaire a l'intention de changer de domicile. En conséquence, il conserve celui qu'il a, tant qu'il n'a pas manifesté d'intention contraire." This doctrine seems to us perfectly correct. It is in accordance with the provisions of our Code, and we feel no hesitation in coming to the conclusion that Edward Livingston, successively Senator in Congress, Secretary of State, and Ambassador to France, retained his ancient domicil in Louisiana ; it not having been shown that he ever did any act which evinced any intention on his part to acquire a domicil elsewhere.

But it has been insisted, that he was really absent from this State ; that he never returned ; and that the expression "reside" used in article 3442 of our Code ought to be construed literally, and not technically. On this subject, we must again refer to some French commentators. It will be conceded, however, that although Edward Livingston resided, literally speaking, several years in the city of Washington, and subsequently at Paris, his residence *de facto* was merely accidental, and temporary ; and that, under the doctrine above established, he still had his residence *de jure* or legal domicil in Louisiana. Troploug, Prescription, No. 866, puts the question : "Mais que devrait-on décider si la résidence de fait se trouvait en opposition avec le domicile de droit ? par exemple, ayant mon domicile de droit à Paris, d'où je suis originaire et où je conserve l'esprit de retour, je demeure habituellement à Nancy. Nous pensons que *l'unité de domicile*, qui est

une des bases du Code Civil, devra faire prononcer que je suis absent, bien que l'immeuble possédé par le tiers détenteur se trouve dans le ressort de ma résidence. *Le droit l'emportera sur le fait, &c.*" The reverse of the case put by Troplong, as an illustration of his doctrine, presents exactly, under a direct application of the rule which he establishes, the same question which we have under consideration. Thus if, having my legal domicil, (*domicile de droit*) at New Orleans, where I intend to return, I reside habitually at Washington, it must be decided, (being considered as absent from the latter place,) that I am present in Louisiana, where the property is situated, although such property, possessed by a third possessor, be out of the limits of my place of residence (in the literal sense of the word), and that the time necessary to acquire the prescription will not run *inter absentes*. In No. 870, Troplong proceeds to examine the question in its consequences, and explains the dangers that would result from the adoption of a contrary rule, to wit, " à faire prévaloir la résidence sur le domicile." He says : " Sans doute, d'assez grands embarras auraient pu survenir dans la pratique, si la loi eût voulu qu'on tînt compte de toutes les allées et venues, de tous les déplacemens du propriétaire. Mais telle n'a jamais été sa pensée. Elle a pris pour base fixe le domicile, qui, quoique doué d'une mobilité favorable aux intérêts privés, ne change pas cependant par des circonstances légères, et est censé rester toujours le même malgré des voyages et même de longues absences. L'on verra donc ici une nouvelle raison d'adopter l'opinion que j'exposais au No. 866, savoir, que la présence ou l'absence du véritable propriétaire se règle non pas sur la résidence, mais sur le domicile, seule base que présente quelque chose de fixe." The same doctrine is also entertained by Vazeille, No. 504, who is in favor of the legal domicil (*domicile de droit*); and it appears to us so clear, though controverted by Pothier, Prescription, No. 107, and by Delvincourt, vol. 2, p. 656, note, who are both of a different opinion, that it does not require any further comment or discussion, and we cannot refrain from adopting it in our jurisprudence. We shall, therefore, conclude that Edward Livingston having retained his legal domicil in Louisiana, could not be considered as residing out of the State ; and that, under the circumstances of this case, the defendants had

acquired the prescription of ten years against his representatives, previous to the institution of this suit.

From the view we have taken of the question of prescription, we have not thought proper to examine and investigate the question of ratification, also relied upon by the defendants, and upon which the inferior judge appears to have based the judgment appealed from. But, had it been necessary, we are not ready to say that we should not have come to the same conclusion.

With regard to the alleged informalities upon which the plaintiff relied, in his attempt to attack the validity of the marshal's sale which forms the original title of the defendants, we cannot forbear remarking that, under the principles above recognized, the prescription of five years established by the fourth section of the act of the 10th March, 1834, entitled "an act relative to advertisements," ought also to prevail; and this alone would be sufficient to defeat the plaintiff's pretensions.

*Judgment affirmed.*