## No. 10,094.

### HENRI LARQUIÉ vs. HIS WIFE.

40 457
52 1495

A party who resides in this State with the intention of fixing here his domicile for an indefinite period of time and engages in active business pursuits for a number of years acquires a domicile in the place in which he has thus lived, which becomes the conjugal domicile, if, in the meantime, he contracts marriage even in a foreign country with a wife, whom he brings to his residence and who lives here with him a number of years.

The wife who visits and sojourns in her native country and refuses to return to the domicile thus established is amenable to the courts of this State in an action for separation from bed and board by the husband for her alleged abandonment of the conjugal domicile.

APPEAL from the Civil District Court, Parish of Orleans. *Voorhies*, J.

*Frank D. Chretien* and *Blanc & Butler* for Plaintiff and Appellant.

*Harry H. Hall* and *J. N. Wolfson* for Defendant and Appellee.

The opinion of the Court was delivered by

POCHÉ, J. Resisting her husband's demand for a judgment of separation from bed and board predicated on her alleged abandonment of the conjugal domicile, the defendant urges the following reasons substantially :

1. That the conjugal domicile is not in Louisiana, but in France, where the marriage was contracted in June, 1872, and where the spouses resided for several years, upon the distinct promise of the plaintiff to continue to reside in that country.

2. That when she left the temporary abode in New Orleans, where the couple had resided from 1876 to 1881, it was with the permission and at the request of plaintiff, who sent her to France for reasons of her failing and impaired health.

3. That, under her present condition of health, in connection with climatic influences prevailing in New Orleans, her life would be endangered by a return to the city.

Plaintiff appeals from a judgment which rejected his demand.

The testimony is very conflicting, but the preponderance of the evidence establishes to the entire satisfaction of the judicial mind the following facts :

Plaintiff, who is a native and is yet a citizen of France, came to New Orleans in the year 1846, since which time he has been continuously engaged in active business pursuits of various kinds in this city, where he has continuously resided, save and except two years, during

which he lived in France, immediately preceding and following the date of his marriage.

In 1873 he returned to this country with his wife, with whom he lived here until 1875, when they, together, made a trip to France, whence they returned in 1876, bringing with them their first child, whom they had left in France in 1873. Their second child was born in this city, where the two spouses lived together, "keeping house," until 1881, when the defendant went to France, with the consent of her husband, and where she has since sojourned, notwithstanding reiterated requests and demands from him to return to their home in this city. To these demands she has persistently resisted, under various pretexts—that of ill health being the reason given to the husband and to the court.

During his long residence in this country plaintiff has, at divers times, been the lessee of a portion, and is now the lessee, of all of the public markets of the city of New Orleans, and since the year 1880 he has also filled the functions of president of a street railroad company in this city.

In his contract with the city, in authentic form, plaintiff represents himself and is dealt with as a resident of New Orleans; and the nature of the contract itself requires a personal attention and control which a resident alone can give. The same may be said of plaintiff's functions as president of a city railroad company. On the occasions of two recent trips which he made to France, one in 1882 and the other in 1884, it became necessary for him to obtain a leave of absence from the board of directors of the railroad company.

On both of those visits to his native country, but more particularly in 1884, plaintiff used every means within his power, including the assistance of other persons, to decide and induce his wife to return with him to his home in this city, but to no avail.

In the examination of the record due consideration has been given to testimony and other evidence showing that plaintiff has always had and manifested his intention and cherished the hope that if he succeeded in retrieving his almost lost fortune, which he had earned in this city, he would, in the remote and uncertain future, return to live and end his days in his mother country, on property which he purchased there in 1872.

But the proof is conclusive that on his return from France in 1873 he resumed his permanent residence, and established his fixed domicile for an indefinite time in this city, where he owns considerable property,

and which thus became the conjugal domicile. Hence the jurisdiction of this case properly and legally belongs to the courts of this State. C. C. 38, 42, 43; Verret vs. Bouvillain, 33 Ann. 1305; Mullen vs. Hilton, 13 Ann. 1; Gravillon vs. Rickarts, 13 La. 297; Dugat vs. Markham, 2 La. 35; Chrétien vs. Chrétien 5 N. S. 61.

Respectful consideration has been given to the conclusions reached by a competent court in France, in a suit for separation instituted in that country against the plaintiff herein by his wife, and in which it was held that the conjugal domicile was in that country. But it is very clear that the French tribunal did not have before it the testimony which is contained in the record before this Court. But, at all events, the question presented here must be disposed of in accordance with our laws and our jurisprudence, under which it could never be held that plaintiff had not a fixed domicile in Louisiana at the time of bringing this suit; and hence that domicile must be held to be that of the wife also.

On the other points of contention the record shows that defendant did have the permission and consent of her husband to return to France in 1881, and that he then believed that the trip was necessary to her health. And there is testimony in the record to the effect that she has not yet entirely recovered her former robust health, and that in the opinion of her physician there, the climate of Louisiana would not have a beneficial influence on her peculiar ailment. But on that point the evidence in the record is overwhelming in support of the proposition that her health would not suffer by a return to this city, and, above all, that her condition of health, such as it may be, is not the reason of her refusal to come back to her husband's domicile.

She is entirely actuated by other reasons, which it is not necessary to mention, but which have no force in law, and which cannot justify her persistent refusal to return to the conjugal domicile. C. C. 120; Neal vs. Her Husband, 1 Ann. 315; Gahn vs. Darby, 36 Ann. 70.

In the latter case, Article 120 of the Civil Code was construed by this Court so as to require the wife to follow her husband to a new conjual domicile which he proposed to establish and to which she had never been. A fortiori will the rule apply to a case in which it appears that the husband has resided over forty years in a place, to which he brought his wife fifteen years ago, and in which she lived with him at the conjugal domicile for seven years.

The record and the law governing the matter clearly lead to the

conclusion that the case is with plaintiff, and that he is also entitled to the custody of the children born of the marriage.

All the formalities prescribed by Article 145 of the Civil Code having been complied with, the proper judgment to be rendered is one of separation from bed and board.

It is, therefore, ordered that the judgment appealed from be annulled, avoided and reversed; and it is now ordered that plaintiff do have and recover a judgment of separation from bed and board against his wife, the defendant herein, with the custody of the children born of their marriage, and for costs in both courts.