(71 South. 936)

No. 20763.

STEVENS v. ALLEN.

(Jan. 24, 1916. On Rehearing, May 22, 1916.)

*(Syllabus by the Court.)*

1. SEPARATION FROM BED AND BOARD—DOMICILE OF PARTIES.

Where the husband and wife were married in the state of New York, and the wife some 12 years later, refused to follow the husband to the state of Oregon, and the husband subsequently became a resident of the state of Louisiana, the wife continuing to reside in the state of New York, *held*, that the husband could not sue in the court of Louisiana for a separation from bed and board on the ground of the alleged abandonment in the state of New York, although the husband may have had a domicile of origin in the state of Louisiana. There can be no abandonment of the matrimonial domicile in this state where there has been no common dwelling.

Provosty and O'Niell, JJ., dissenting.

On Rehearing.

2. DIVORCE ☞62(2, 6)—DOMICILE ☞4(1), 5—ABSENCE IN MILITARY SERVICE—HUSBAND AND WIFE—GROUNDS FOR DIVORCE—"ABANDONMENT"—JURISDICTION.

A youth whose domicile is in Louisiana and who is appointed cadet in the military academy at West Point, and remains in the army until his voluntary retirement, after 30 years of continuous service, does not thereby forfeit such domicile, and the wife, whom he marries in another state, has no other domicile than his, and, save for just cause, can acquire no other and is bound to follow, and live with, him whithersoever he may choose to go and reside; and, in such case, where the wife, without just cause, refuses to accompany the husband to the station and temporary residence to which he is assigned by his superior officers, she is guilty of "abandonment," within the meaning of our law, notwithstanding that she has never been within this state, and the husband, who shortly thereafter retires and establishes an actual residence in Louisiana, at the place of his original domicile, may bring suit in a court of such residence and domicile for separation a mensa et thoro, and summon the wife therein, by substituted service, to return to the matrimonial domicile so established, and such court is vested with jurisdiction in the premises, and may render judgment determining the marital status of the plaintiff, which judgment will be binding, at least, within the limits of this state, and, according to the views of this court, should be binding in other jurisdictions.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 200–202, 210, 220; Dec. Dig. ☞

62(2, 6); Domicile, Cent. Dig. §§ 5–8, 10–23, 24–35; Dec. Dig. ☞4(1), 5.

For other definitions, see Words and Phrases, First and Second Series, Abandonment.]

Land, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by Gustave W. S. Stevens against Grace Elizabeth Allen, his wife. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Howe, Fenner, Spencer & Cocke, of New Orleans, for appellant. J. M. Quintero, of New Orleans, curator ad hoc, for appellee.

LAND, J. This is a suit for separation from bed and board on the ground of abandonment. The curator ad hoc, appointed to represent the defendant, excepted to the jurisdiction of the court upon the admitted fact that the wife had never been within the limits of the state of Louisiana. This exception was sustained, and the suit was dismissed. The plaintiff has appealed.

Plaintiff's father, Gen. Walter H. Stevens, was an officer in the United States Army, who, in 1848 married plaintiff's mother in the state of Louisiana, and in 1861 resigned his office, and established his residence in the city of New Orleans. A short time thereafter Gen. Stevens entered the Confederate Army. It appears from the deposition of the widow of Gen. Stevens that, after the close of the Civil War, he went to Mexico for a time, but never changed his residence.

The plaintiff was born in the state of Virginia, but remained there only 7 months, and, when he attained the age of 19 years, was appointed as a cadet to the United States Military Academy of West Point from the state of Louisiana. Plaintiff, having graduated from said institution, entered the United States Army, and there remained continuously until March 1, 1913, when he retired with the rank of lieutenant colonel. There-upon the plaintiff returned to New Orleans, where he has been residing since March, 1913. Plaintiff alleges "that he has at all times retained his domicile in the city of New Orleans," but there is no allegation or proof of his actual residence in that city prior to the year 1913.

Plaintiff further alleges that in July, 1899, while stationed temporarily as an officer in the United States Army at Ft. Meyer, Va., he was married to the defendant in the city of Brooklyn, N. Y. Plaintiff further alleges that in November, 1912, he was stationed at Ft. Stevens, Or., and that his said wife refused without cause to accompany him to Ft. Stevens, although plaintiff went to Brooklyn at the time and lived there for several days with his wife and urged her to return with him. Plaintiff further alleges that his wife is now residing at 747 Quincy street in Brooklyn.

Defendant and the plaintiff were married in the city of Brooklyn in 1899. In July, 1912, she and her husband were living there together; and there is nothing to show that the defendant since her marriage has lived elsewhere. The alleged abandonment took place in the state of New York; and the defendant has been living separate and apart from her husband since November, 1912.

[1] The question is whether the courts of Louisiana have jurisdiction to decree a separation from bed and board in a case of this kind. The judge a quo held that his court had no jurisdiction in the premises.

The curator ad hoc cites Heath v. Heath, 42 La. Ann. 437, 7 South. 540, which is on all fours with the case at bar, with the exception of plaintiff's claim of domicile of origin in the state of Louisiana. Plaintiff's complaint is not that his wife refused to return to the city of New Orleans, but that she refused to accompany him to his temporary residence in the state of Oregon. In Heath v. Heath, supra, the court said:

."In this case the parties to the marriage never had a matrimonial domicile in this state, as the wife has never been here with her husband. There never has been a common dwelling here, and therefore the wife could not abandon it. Muller v. Hilton, 13 La. Ann. 1 [71 Am. Dec. 504]; Champon v. Champon, 40 La. Ann. 40 [3 South. 397]."

See, also, Nicholas v. Maddox, 52 La. Ann. 1493, 27 South. 966.

The matrimonial domicile of the parties was in Brooklyn.

The plaintiff's suit is based on the alleged abandonment of 1912, and he does not claim a separation from bed and board on the ground that, since the establishment of his residence in the city of New Orleans, he has invited his wife to live with him, and that she has refused to do so.

Judgment affirmed.

PROVOSTY and O'NIELL, JJ., dissent.

### On Rehearing.

MONROE, C. J.    [2] The trial court sustained an exception to its jurisdiction "ratione personæ and ratione materiæ," leveled at the case as presented by the petition, which case is also supported by the testimony of plaintiff's mother and the records of the War Department, and, briefly restated is as follows:

In 1882, plaintiff, being then 18 years of age and domiciled in New Orleans, was appointed cadet in the United States Military Academy at West Point from the First Congressional District of Louisiana, and entered the Academy accordingly. In 1886 he was graduated and appointed lieutenant of artillery, and he remained continuously in the service until March, 1913, when he voluntarily retired with the rank of lieutenant colonel, and, having established his actual residence in New Orleans, where he had always retained his legal domicile, he brought this suit, alleging that, in 1899, while stationed at Ft. Meyer, Va., he had been married, in Brooklyn, N. Y., to the defendant herein;

that in November, 1912, being then stationed at Ft. Stevens, Or., his wife had refused, without legal cause, to accompany him thither, although he had gone to Brooklyn and there lived with her for several days, urging her so to do; and he prayed that an attorney be appointed to represent her; that she be cited, notified, and summoned, through said attorney, as provided by law, to return to the actual residence and matrimonial domicile; and that, in due course, he have judgment decreeing a separation from bed and board. The three reiterated summonses to return were accordingly issued and served upon the attorney (duly appointed curator ad hoc), after which, and upon showing that defendant had failed to comply therewith, judgment was rendered, condemning her to return, and the judgment was similarly served, from month to month, for three months, and the curator then filed the exception to jurisdiction, which, having been sustained, presents the question that we are here called on to consider.

The following propositions of law are established beyond dispute in this state and, generally speaking, in other jurisdictions, to wit:

1. With the exception below stated, a married woman has no other domicile, and can acquire no other, than that of her husband, and is bound to follow and live with him wherever he may choose to reside. Civil Code, arts. 39, 120; Chrétien v. Her Husband, 5 Mart. (N. S.) 61; Dugat v. Markham, 2 La. 35; Neal v. Her Husband, 1 La. Ann. 315; Sanderson v. Ralston, 20 La. Ann. 312; Gahn v. Darby, 36 La. Ann. 70; Larquie v. His Wife, 40 La. Ann. 457, 4 South. 335; McLean v. Janin, 45 La. Ann. 664, 12 South. 747; Nicholas v. Maddox, 52 La. Ann. 1493, 27 South. 966; Birmingham v. O'Neil, 116 La. 1085, 41 South. 323; First Nat. Bank v. Hinton, 123 La. 1025, 49 South. 692; 14 Cyc. 846.

The exception arises whenever it becomes necessary and proper that the wife should acquire a separate domicile, as, when the misconduct of the husband compels her to leave him, or, when he abandons her. Champon v. Champon, 40 La. Ann. 28, 3 South. 397; Smith v. Smith, 43 La. Ann. 1140, 10 South. 248; McLean v. Janin, 45 La. Ann. 664, 12 South. 747; Succession of Benton, 106 La. 494, 31 South. 123, 59 L. R. A. 135; Wilcox v. Nixon, 115 La. 47, 38 South. 890, 112 Am. St. Rep. 266; King v. King, 122 La. 582, 47 South. 909; 14 Cyc. 818, 847.

2. Unless otherwise provided by law, the domicile of origin is retained until another is acquired. Gravillon v. Richards, 13 La. 395, 33 Am. Rep. 563; Sanderson v. Ralston, 20 La. Ann. 312; Succession of Steers, 47 La. Ann. 1551, 18 South. 503; Succession of Simmons, 109 La. 1095, 34 South. 101; Marks v. Germania Saving Bank, 110 La. 659, 34 South. 725; Ballard v. Puleston, 113 La. 239, 36 South. 951; First Nat. Bank v. Hinton, 123 La. 1024, 49 South. 692; 14 Cyc. 851.

3. Voluntary absence of two years, or the acquisition of a domicile in any other state of the Union, forfeits the domicile in this state; but domicile, once acquired, is not forfeited by absence on business of the state or of the United States. C. C. 41, 46; State v. Poydras, 9 La. Ann. 167; Walden v. Canfield, 2 Rob. 466; Kinder v. Scharff, 125 La. 594, 51 South. 654; 14 Cyc. 850.

4. The same tests are applied in establishing change of domicile from one state to another as from one parish in this state to another parish. Hyman, Lichtenstein & Co. v. Schlenker & Hirsch, 44 La. Ann. 108, 10 South. 623; Succession of Simmons, 109 La. 1097, 34 South. 101.

5. The rule that no valid personal judgment can be rendered against a nonresident merely upon constructive service has no application to proceedings in rem and is—

"moreover, limited by the inherent power which all governments must possess over the marriage relations, its formation and dissolution, as regards their own citizens. From the exception, it results that, where a court of one state, conformably to the laws of such state, or, the state through its legislative department, has acted concerning the dissolution of the marriage tie, as to a citizen of that state, such action is binding in that state, as to such citizen, and the validity of the judgment may not therein be questioned on the ground that the action of the state, in dealing with its own citizens concerning the marriage relation, was repugnant to the due process clause of the Constitution." Haddock v. Haddock, 201 U. S. 567, 26 Sup. Ct. 525, 50 L. Ed. 868–869, 5 Ann. Cas. 1.

Prior to the decision thus quoted, the doctrine had been recognized that, where the courts of a state, in the exercise of the jurisdiction to determine the marital status of a citizen of such state, decreed the dissolution of the marriage tie by which he was bound, the judgment so rendered was entitled to full faith and credit in the other states and operated to dissolve the marriage as to both the parties thereto, the idea being that there could be no such thing as a husband without a wife or a wife without a husband; but, in the case cited, it was held that the jurisdiction which one state may possess quoad its own citizen does not, of itself, confer, or attract the jurisdiction to determine the marital status of the citizen of another state, and that it is only when the court has jurisdiction of both parties, that its judgment is entitled to extraterritorial recognition by virtue of the full faith and credit clause of the Constitution.

Thus, in Atherton v. Atherton, 181 U. S. 157, 21 Sup. Ct. 544, 45 L. Ed. 795, it appeared that the plaintiff, being a resident of New York and the defendant a resident of Kentucky, they were married in New York, and went immediately to Kentucky, where they established their residence and lived for several years, during which period a child was born to them. The wife then left the husband on account of bad treatment and returned to the home of her mother in New York, and there was a contract between her husband and herself concerning the custody

and maintenance of the child, which she carried with her, and concerning alimony for herself. The husband then brought suit in Kentucky for a divorce, on the ground of abandonment by the wife, and obtained judgment, and the wife, having brought suit in New York for separation from bed and board, on account of cruel and abusive treatment whilst living in Kentucky, the husband set up the judgment of divorce which he had obtained, as a bar to the action, but the New York court decided that it was inoperative and void, as to the wife, for the reason that she was not personally cited, had made no appearance, and, having ceased to be a resident of Kentucky and become a resident of New York, the Kentucky court acquired no jurisdiction over her by the substituted service authorized by the law of that state. In holding that there was error in the ruling so made, and that the judgment rendered by the Kentucky court was entitled to full faith and credit in the courts of New York, Mr. Justice Gray, as the organ of the Supreme Court, said (181 U. S. 171, 21 Sup. Ct. 544, 45 L. Ed. 795):

"In this case, the divorce in Kentucky was by the court of the state which had always been the undoubted domicile of the husband, and which was the only matrimonial domicile of the husband and wife. The single question to be decided is the validity of that divorce, granted after such notice had been given as was required by the statutes of Kentucky. * * *"

181 U. S. 162, 21 Sup. Ct. 544, 45 L. Ed. 795:

"The purpose and effect of a decree of divorce from the bond of matrimony by a court of competent jurisdiction are to change the existing status or domestic relation of husband and wife and to free them both from the bond. The marriage tie, when thus severed as to one party, ceases to bind either. A husband without a wife, or a wife without a husband, is unknown to the law."

181 U. S. 166, 21 Sup. Ct. 544, 45 L. Ed. 795:

"Chancellor Kent, * * * says of that case [referring to the case of Harding v. Alden, 9 Greenl. (Me.) 140, 23 Am. Dec. 549] that it was there held 'that a decree of divorce did not fall within the rule that a judgment rendered against one not within the state, nor bound by its laws, nor amenable to its jurisdiction, was not entitled to credit against the defendant in another state, and that divorces pronounced according to the law of one jurisdiction, and the new relations thereupon formed, ought to be recognized, in the absence of all fraud, as operative and binding everywhere, so far as related to the dissolution of the marriage, though not as to other parts of the decree, such as an order for the payment of money by the husband.'

"And the Chancellor adds, 'This is an important and valuable decision.' 2 Kent. Com. 110, note.

"In Ditson v. Ditson (1856) 4 R. I. 87 (of which Judge Cooley, in his treatise on Constitutional Limitations, 403, note, says there is no case in the books more full and satisfactory upon the whole subject of jurisdiction in divorce suits), the Supreme Court of Rhode Island, in an elaborate opinion by Chief Justice Ames, affirmed its jurisdiction, upon constructive notice by publication, to grant a divorce to a wife domiciled in Rhode Island against a husband who had never been in Rhode Island, and whose place of residence was unknown, and said:

"'It is obvious that marriage, as a domestic relation, emerged from the contract which created it, is known and recognized as such throughout the civilized world; that it gives rights and imposes duties and restrictions upon the parties to it, affecting their social and moral condition, of the measure of which every civilized state, and certainly every state of this Union, is the sole judge so far as its own citizens or subjects are concerned, and should be so deemed by other civilized, and especially sister, states; that a state cannot be deprived, directly or indirectly, of the sovereign power to regulate the status of its own domiciled subjects and citizens, by the fact that the subjects and citizens of other states, as related to them, are interested in that status; and in such a matter has a right, under the general law, judicially to deal with and modify or dissolve this relation, binding both parties to it by the decree, by virtue of its inherent power over its own citizens and subjects, and to enable it to answer their obligatory demands for justice; and, finally, that in the exercise of this judicial power, and in order to [secure] the validity of a decree of divorce, whether a mensa et thoro or a vincula matrimonii, the general law does not deprive a state of its proper jurisdiction over the condition of its own citizens, because nonresidents, foreigners, or domiciled inhabitants of other states have not or will not, become, and cannot be made to become, personally subject to the jurisdiction of its courts; but upon the most familiar principles, and as illustrated by the most familiar analogies of general law, its courts may, and can, act conclusively in such a matter upon the rights and interests of such persons, giving them such notice, actual or constructive, as the nature of the case admits of, and the practice of courts in similar cases sanctions.'"

In the cited case of Haddock v. Haddock, it appeared that plaintiff and defendant resided in New York and were there married, in 1868, but never lived together, and that the husband abandoned the wife, moved to Connecticut, where he acquired a domicile, and, in 1881 obtained a judgment of divorce upon substituted service, the wife, so far as appears, having never been in Connecticut and not having submitted herself to the jurisdiction of the court by which the judgment was rendered. Eighteen years later (1899) the wife brought suit in New York for separation from bed and board, and obtained personal service on the husband, who offered the Connecticut judgment as a bar to the action, but it was excluded on the grounds that the Connecticut court had not obtained jurisdiction, quoad the wife, by the substituted service, or publication, and that the cause of action (desertion by the wife) was falsely alleged. As may be inferred from the excerpt which we have already made from its opinion, the Supreme Court of the United States held that, though the judgment in question was entitled to recognition in Connecticut, it could not be enforced in New York; saying, by way of answer, in part, to the argument that the domicile within one state of one party to a marriage gives such state jurisdiction to decree a dissolution of the marriage tie which will be obligatory in all the other states, by reason of the full faith and credit clause of the Constitution.

"If the fact be that, where persons are married in the state of New York, either of the parties to the marriage may, in violation of the marriage obligation, desert the other and go into the state of Connecticut, there acquiring a domicile, and procure a dissolution of the marriage which would be binding in the state of New York as to the party to the marriage there domiciled, it would follow that the power of the state of New York as to the dissolution of the marriage, as to its domiciled citizens, would be of no practical avail. * * * No one denies that the states, at the time of the adoption of the Constitution, possessed full power over the subject of marriage and divorce. No one, moreover, can deny that, prior to the adoption of the Constitution, the extent to which the states would recognize a divorce obtained in a foreign jurisdiction depended upon their conceptions of duty and comity. Besides, it must be conceded that the Constitution delegated no authority to the government of the United States on the subject of marriage and divorce. Yet, if the proposition be maintained, it would follow that the destruction of the power of the states over the dissolution of marriage, as to their own citizens, would be brought about by the operation of the full faith and credit clause of the Constitution, * * * and, as the government of the United States has no delegated authority on the subject, that government would be powerless to prevent the evil thus brought about by the full faith and credit clause. Thus, neither the states nor the national government would be able to exert that authority over the marriage tie possessed by every other civilized government. * * * It is urged that the suit for divorce was a proceeding in rem and therefore the Connecticut court had complete jurisdiction to enter a decree, as to the res, entitled to be enforced in the state of New York. * * * But, as the marriage was celebrated in New York, between citizens of that state, it must be admitted, under the hypothesis stated, that, before the husband deserted the wife in New York, the res was in New York, and not in Connecticut. As the husband, after wrongfully abandoning the wife in New York, never established a matrimonial domicile in Connecticut, it cannot be said that he took with him the marital relation from which he fled to Connecticut. Conceding, however, that he took with him so much of the marital relation as concerned his individual status, it cannot in reason be said that he did not leave in New York so much of the relation as pertained to the status of the wife. From any point of view, then, under the proposition referred to, if the marriage relation be treated as the res it follows that it was divisible, and therefore there was a res in the state of New York and another in the state of Connecticut. Thus considered, it is clear that the power of one state did not extend to affecting the thing situated in another. * * * As we have pointed out, * * * it does not follow that a state may not exert its power as to one within its jurisdiction simply because such exercise of authority may not be extended beyond its borders into the jurisdiction and authority of another state. The distinction was clearly pointed out in Blackinton v. Blackinton, 141 Mass. 432, 5 N. E. 830, 55 Am. Rep. 484. * * * The same doctrine was clearly expounded in the Privy Council, in an opinion delivered by Lord Watson, in the divorce case of Le Mesurier v. Le Mesurier (1895) A. C. 507, where it was said: 'When the jurisdiction of the court is exercised according to the rules of international law, as in the case where the parties have their domicile within its forum, its decree, dissolving their marriage, ought to be respected by the tribunals of every civilized country. * * * On the other hand, a decree of divorce a vinculo, pronounced by a

court whose jurisdiction is solely derived from some rule of municipal law peculiar to its forum, cannot, when it trespasses upon the interests of any other country to whose tribunals the spouses were amenable, claim extraterritorial authority.'"

The court states the following, among others, as propositions which are "irrevocably concluded" by its previous decisions, to wit:

"Where husband and wife are domiciled in a state, there exists jurisdiction in such state, for good cause, to enter a decree of divorce which will be entitled to enforcement in another state ·by virtue of the full faith and credit clause."

"Where the domicile of matrimony was in a particular state, and the husband abandons his wife and goes into another state, in order to avoid his marital obligations, such other state, to which the husband has wrongfully fled, does not, in the nature of things, become a new domicile of matrimony, and therefore is not to be treated as the actual or constructive domicile of the wife. Hence the place where the wife was domiciled, when so abandoned, constitutes her legal domicile until a new actual domicile be by her elsewhere acquired."

"So, also, it is settled that, where the domicile of a husband is in a particular state, and that state is also the domicile of matrimony, the courts of such state, having jurisdiction over the husband, may in virtue of the duty of the wife to be at the matrimonial domicile, disregard an unjustifiable absence therefrom and treat the wife as having her domicile in the state of the matrimonial domicile for the purposes of the dissolution of the marriage, and, as a result, have power to render judgment dissolving the marriage which will be binding upon both parties, and be entitled to recognition in all other states by virtue of the full faith and credit clause."

Applying to the case before it the various propositions regarded as settled, the court stated, as beyond dispute, the conclusions: (a) That no question could arise, on the record, concerning the right of the state of Connecticut to give effect, within its borders, to the judgment of divorce rendered by one of its courts in favor of one of its citizens, there domiciled; (b) that, as New York was the domicile of the wife and "the domicile of matrimony" from which the husband had fled, the domicile of the wife continued in New York; (c) that, as the wife was not constructively present in Connecticut, by virtue of a matrimonial domicile, and was not there individually, and did not appear in the case,

and was only constructively served with notice to appear, the Connecticut court did not acquire jurisdiction by virtue of her domicile or as a result of personal service.

According to the court's statement of the case, the complaint charged that the parties were married in New York, where they both resided, and that the husband "immediately following the marriage abandoned the wife," and thereafter failed to support her; and the referee found "that after the marriage the parties never lived together." The expression, "the domicile of matrimony," as used by the court in stating its conclusions, must therefore have been intended to describe the domicile which, by operation of law, resulted from the merger of the domicile of the wife into that of the husband, by the fact and upon the instant of the marriage, and notwithstanding its immediate abandonment by the husband; and that seems to have been the view taken by this court in D'Auvilliers v. Her Husband, 32 La. Ann. 606, in which it appeared that the defendant was a citizen and resident of Louisiana, and that, while sojourning in France, he had married a lady of that country, who thereafter brought the suit for final divorce in a Louisiana court. To the objection, that plaintiff's complaints were of matters which occurred out of the state, and, the marriage having taken place out of the state and the wife never having actually lived here, that such matters could not constitute ground of an action for divorce, the court said:

"Though the marriage actually occurred in France, the marriage contract and other proceedings show that defendant was, at the time, only temporarily commorant in France. The marriage there was contracted with reference to the laws of this state; the husband's domicile, and the domicile of the wife, as well as that of the husband, was, from the instant of the marriage, in Louisiana."

And so, although it does not appear that there was any marriage contract (as contradistinguished from the contract of marriage)

in this case, the plaintiff, as an officer of the army, was only temporarily in New York, at the time of the marriage, and it is fair to assume, until the contrary is shown, that defendant knew when she married him that his domicile was in Louisiana, and that, under the law, as well of New York as of Louisiana, his domicile would immediately become her domicile, and she would incur the obligation to follow and reside with him wherever he might choose to live.

It is no doubt true, in general, that a domicile can only be established facto et animo, but it is also true that, if the law so declares it may be established, or retained, without regard to either fact or intention, and that is the case with the officers in the service of the government, as, for instance, those who enter the military or naval service, of whom it may be said that, in most instances, they depart from the homes of their childhood with the expectation of devoting their lives to such service, leaving no actual domiciles behind them, and with no actual intention of returning to establish them, and yet the law declares that they neither lose the legal domiciles which they leave nor acquire others in their travels. C. C. 41, 46; 9 R. C. L. 551. If, then, the legal domicile of the plaintiff at the time of the marriage was in Louisiana, and the domicile of the defendant was fixed by that of the plaintiff from the moment he became her husband, the domicile of husband and wife being therefore one and the same, where else than in Louisiana could there have been a matrimonial domicile? Where else than in Louisiana could any one have brought either, or both, of them into court, to answer a personal demand, save by personal service?

In Dugat v. Markham et al., 2 La. 29, it appeared that Anne Dugat married D. K. Markham, a lawyer and that they immediately went to live on her plantation in the parish of Lafayette, of which he was put in charge; that dissatisfaction arose which resulted in his leaving the plantation and resuming the practice of his profession in a nearby village, after which he moved to Opelousas in the parish of St. Landry; that he invited his wife to follow him, which she refused to do; that a suit was brought against both of them in St. Landry for a board and tavern bill which he had incurred whilst in the village, and that the citations were served at the domicile which he had established in St. Landry; that Markham appeared and answered for both; and that judgment was rendered against both, the wife being held liable on the ground that, by the marriage contract, she had bound herself to support the entire charges of matrimony. A fi. fa. was issued under which her property was seized, and she enjoined its further execution and prayed that the judgment be annulled on the grounds that she had never been cited, and that her husband was not authorized to appear in her behalf, and the ground last mentioned was sustained, but, with reference to that first mentioned, the court said (2 La. 35):

"The first question of law arising out of these facts relates to the legality of the service of citation on the wife, and depends for its solution on her domicile. When married persons are not separated from bed and board, the domicile of the wife is by law that of the husband. See La Code, art. 48."

The article thus cited (now article 39) as also part of article 122 (now 120) were applied in Neal v. Her Husband, 1 La. Ann. 315, in which it appeared that plaintiff had been married to defendant in Arkansas, and had there lived with him until, by conduct which entitled her to a divorce, he had compelled her to leave him, when she came to Louisiana, where she was residing when she brought the suit, praying for divorce, and was met with a plea to the jurisdiction of the court, filed by the curator ad hoc who had been appointed to represent the absent defendant, which plea was sustained by the

trial court. In dealing with the question so presented upon her appeal, this court said:

"The court below did not err. Under the well-settled jurisprudence of all the states of this Union with whose jurisprudence we have any acquaintance, and in view of the principles expressly established by our own statutes, and especially of those provisions of our Code which declare that a married woman has no other domicile than that of her husband, and that she must follow him wherever he chooses to reside, it is manifest that no court of this state should entertain this suit to dissolve a marriage, contracted in Arkansas, where the husband continues to live, for causes there originating."

The doctrine thus enunciated was no doubt, ·generally accepted at the time (70 years ago) when the opinion from which we have quoted was handed down, and, subject to the important exception that, where there is legal justification, the wife may acquire a separate domicile, is still accepted as may be seen from the following excerpt from a valuable work now in course of publication, to wit:

"Following the rule established at common law a woman, on her marriage, loses her own domicile and acquires that of her husband, and the matrimonial domicile is presumed to be that of the husband at the time of the marriage. In general, this rule governs, no matter where the wife actually resides. Under this rule it has been held that, in a suit for divorce, based on the ground of a wife's desertion of her husband, the legal fiction that a wife's domicile follows that of her husband gives jurisdiction to the court of a state to which the husband had removed and in which he had resided for the time required by the statute, although the marriage took place and the desertion arose in the state in which the defendant continued to reside." 9 R. C. L. pp. 543, 544.

To the foregoing there is to be added the following, embodying the exception to the rule as stated, which is as well recognized in the settled jurisprudence of to-day as is the rule, to wit:

"When the wife lives separate and apart from her husband, without sufficient cause, she cannot acquire a separate and distinct domicile." Id. 545.

And to the same effect are the following expressions by this court and other authorities:

"Although the law fixes the domicile of the wife as being that of her husband, universal

jurisprudence recognizes an exception to the rule in the case where the husband's conduct has been such as to furnish lawful ground for divorce, which justifies her in leaving him, and therefore necessarily authorizes her to live elsewhere and to acquire a separate domicile." Smith v. Smith, 43 La. Ann. 1146, 10 South. 248 (citing Cheever v. Wilson, 9 Wall. 108, 19 L. Ed. 604; Barber v. Barber, 21 How. 582, 16 L. Ed. 226; 2 Bishop, Mar. & Div. 475; Schouler Hus. & Wife, § 574; 5 A. & E. Enc. of Law, p. 756).

See, also, McLean v. Janin, 45 La. Ann. 664, 12 South. 747; Succession of Benton, 106 La. 495, 31 South. 123, 59 L. R. A. 135; Wilcox v. Nixon, 115 La. 47, 38 South. 890, 112 Am. St. Rep. 266.

"Later cases have, however, broken away from the rule [that the wife is incapable of acquiring a separate domicile] where the wife has been abandoned or forced by brutal treatment to leave the husband, when she is permitted to establish a domicile for herself, and in New York it seems to have been repudiated altogether." 14 Cyc. 847, 848.

And all of the authorities seem now to be agreed that, where any married person, whether husband or wife, in good faith acquires a domicile in, and becomes a citizen of, a particular state or, country, such state or country possesses the inherent power to determine his or her marital status, within its territorial limits, and may dissolve the marriage tie· without regard to the place in which it was contracted, or in which the cause for the dissolution arose, or to the domicile of the other party.

"However, it is well settled in this country that every state has the right to determine the marital status of the persons bona fide domiciled within its limits, and the courts may acquire, under statutory sanction, jurisdiction to dissolve the marriage relation of such persons, irrespective of where the marriage was celebrated, or where the cause of divorce arose, or where the domicile of the defendant may be; and this is true though the parties never lived together within the state." 9 R. C. L. pp. 399–400 (citing Hunt v. Hunt, 72 N. Y. 217, 28 Am. Rep. 129) note, 59 L. R. A. 151 and other authorities).

"If the plaintiff is a bona fide resident of the state of the forum, it is generally recognized that the courts of that state may acquire jurisdiction to decree a divorce in his or her favor, irrespective of the domicile or residence of the

defendant, and such decrees will be valid in the state of the forum to dissolve the marriage relation irrespective of what effect may be given to it in other states." 9 R. C. L. p. 400, § 195 (citing Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 795, note 16 L. R. A. 499 and other authorities).

The law of this state "considers marriage in no other view than as a civil contract" (C. C. arts. 86, 90), and declares that "the husband and wife owe to each other, mutually, fidelity, support and assistance" (C. C. art. 119), and, whilst also declaring that "a married woman has no other domicile than that of her husband" (C. C. art. 39) and that "the wife is bound to live with her husband and to follow him wherever he chooses to reside," further declares, in the same article, that "the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, in proportion to his means and condition" (C. C. art. 120). There is no suggestion in this record that the plaintiff has, in any respect failed to comply with the obligations thus imposed upon the husband, or that the wife had any sufficient reason for her failure to comply with the obligation imposed upon her, to follow and live with him. The case is therefore, within the rule, as prescribed by the law and is not within the exception thereto; nor is it within the doctrine of the cases to which we are referred, save, perhaps, that of Heath v. Heath, 42 La. Ann. 439, 7 South. 540, in which it has been held that actions for separation a mensa et thoro and a vinculo cannot be maintained in the courts of this state for causes arising between persons who were married and domiciled elsewhere prior to their acquiring a domicile here; for in the instant case, the legal domicile of the plaintiff (husband) has always been in Louisiana, and hence was in Louisiana at the time of his marriage in New York, and at the time of the refusal of his wife to accompany him to the military post in Oregon, which was assigned to him by the government as his temporary residence, which refusal constituted the abandonment of which he complains; and, notwithstanding such assignment of residence, his legal domicile, in Louisiana, remained unchanged and the legal domicile of the wife, which, by reason and upon the instant of the marriage became one with that of the husband, also remained unchanged.

The learned curator ad hoc referring in his original brief to the argument of plaintiff's counsel, says:

"Counsel admit that, in order to give the Louisiana court jurisdiction, it is necessary that it have jurisdiction over the marital status of the parties. This marital status, counsel say, and say correctly, is the 'res,' or 'thing,' which gives the court jurisdiction. * * * All of this is true, but, in the case at bar, there is no res, or thing, or marital status, before the Louisiana courts, and consequently there can be no proceeding in rem for or against a res, or thing, which is not found in this jurisdiction. Now, what is necessary to establish this res, or thing, or marital status? We say it is the 'dwelling, jointly,' of the spouses within the state, and, in the matter before your honors, the plaintiff's petition admits that the wife has never been within the state of Louisiana. * * * The theory that the domicile of the husband is the domicile of the wife has no application in a suit for separation from bed and board; the res, or thing, which is the marital status, must be within the state, and the husband cannot bring it into the state, or create the res, by coming alone, into the state, though it may be his ancient, individual domicile."

But the "Haddocks," never dwelt jointly in New York, or elsewhere, nor did the husband ever establish a domicile there, or elsewhere, in which the wife was invited to live with him, and yet the Supreme Court of the United States found that they had a matrimonial domicile in New York, from which it may be inferred that the court considered (since the mere fact of marriage in a particular place can hardly be thought to establish a domicile of any kind in such place) that the establishment of the matrimonial domicile resulted, as a matter of law, from the conjunction of the circumstances that the husband's domicile was in New York and that the domicile of the wife became one and the same by reason of the marriage,

which is the case that we have here. The plaintiff in this case, however, by reason of his being domiciled here, necessarily subjects to the jurisdiction of our courts something more than one-half of the res, to which the curator refers, for there is included, not only his own marital status, but also his quality of master and head of the community of acquets and gains which resulted from the marriage (and which is strictly a Louisiana institution), with the potentiality, on the one hand, of acquiring property, and the obligation or burden, on the other, of sharing such acquisition with a wife and partner who absents herself in, apparent disregard of the obligation which she has assumed, and is now in the attitude of refusing to follow her husband to the residence selected by him, notwithstanding that, if matters remain in their present condition, she may, at the end of his life, assert her rights as widow in community and be awarded one-half of all that he may have accumulated. Cole's Widow v. Executor, 7 Mart. (N. S.) 41, 18 Am. Dec. 241; Dixon v. Dixon's Ex'r, 4 La. 188, 23 Am. Dec. 478. In the case first above cited the court (after referring to the case of Saul v. His Creditors, 5 Mart. [N. S.] 569, 16 Am. Dec. 212) said:

"It is true in that case husband and wife had both resided in this state, and in the present instance, the husband alone lived in Louisiana. But we then determined that the law, * * * which regulated the rights of husband and wife, was real, not personal. * * * It follows, then, as a consequence, that property within the limits of this state must, in the dissolution of the marriage, be distributed according to the laws of Louisiana, no matter where the parties reside, because, viewing the statute as real, it is the thing on which it operates that gives it application, not the residence of the person who may profit by the rule it contains."

In his supplemental brief, the learned curator argues that plaintiff's counsel is seeking to have the court change, in substance the phraseology of the Code, by striking out of article 145 the words "matrimonial domicile," and striking out of article 143 the words "common dwelling," and substituting therefor "husband's domicile" and "common domicile," which it is said, "would be legislating and giving to the codal provisions an entirely different meaning from that intended by the legislators." The articles mentioned read:

"Separation grounded on abandonment by one of the married persons can be admitted only in the case when he or she has withdrawn himself or herself from the common dwelling, without lawful cause, has constantly refused to return to live with the other, and when such refusal is made to appear in the manner hereafter directed. C. C. 143. * * *

"The abandonment with which the husband or wife is charged must be made to appear by three reiterated summonses, made to him or to her from month to month, directing him or her to return to the place of the matrimonial domicile, and followed by a judgment which has sentenced him or her to comply with such request, together with a notification of the said judgment, given to him or her from month to month for three times successively.

"The summons and notification shall be made to him or her at his or her usual residence, if he or she lives in the state, and, if absent, at the place of the residence of the attorney who shall be appointed to him or her by the judge for that purpose, at the suit of the husband or wife praying for separation from bed and board." C. C. 145.

The contention of the learned curator, as we understand it, is, that the words, "common dwelling," as used in article 143, can have no other meaning than habitation, in this state, in which plaintiff and defendant have lived together, and from which defendant has withdrawn, without lawful cause, and that the words, "matrimonial domicile," as used in article 145 have about the same meaning, and that view is thought to find support in the opinion in Heath v. Heath, 42 La. Ann. 439, 7 South. 540, in which case it appeared that the litigants were married in Maine, and, later, moved to Massachusetts, where they lived for some years, when the wife abandoned the common dwelling, after which the husband came to New Orleans, and, having established himself, permanently, brought suit, after a few years, for separation from bed and board, on account of

the abandonment in Massachusetts. The court said:

"There never has been a common dwelling here, and therefore the wife could not abandon it. * * * The married parties have never resided together in this state, and have therefore never acquired any matrimonial domicile in Louisiana to which the wife could be summoned."

We find nothing in article 143 which authorizes the inference that the words "common dwelling," as there used, were intended to be confined in their application to a dwelling in Louisiana, since "dwelling" is merely another word for "residence," which may, or may not, be the legal domicile of the occupant.

"It is customary to distinguish between residence and domicile, on the ground that any place of abode, or dwelling place, constitutes a residence, however temporary it may be, while the term 'domicile' relates rather to the legal residence of a person, or his home, in contemplation of law. As a result, one may be a resident of one jurisdiction although having a domicile in another." 9 R. C. L. p. 539.

It is true that "domicile" is also used instead of "residence," but we are of opinion that it was used advisedly in article 145, to distinguish it from "common dwelling," as used in article 143, since the abandonment by wife of husband, or husband of wife, would be as effective, from a temporary dwelling, at a summer resort, as from the legal domicile, whereas it would only be in a court having jurisdiction of such domicile that a suit could be maintained against the abandoning spouse for separation from bed and board on account of the abandonment.

This court has several times held that the failure of the wife to accompany her husband to the residence chosen by him is an abandonment within the meaning of article 143 (Gahn v. Darby, 36 La. Ann. 70; McLean v. Janin, 45 La. Ann. 664, 12 South. 747; Nicholas v. Maddox, 52 La. Ann. 1493, 27 South. 966), and, if that were not the case, then, should a citizen of Louisiana marry in a country or state in which divorces are not allowed

and the lady were to decline to accompany him to his domicile and home in Louisiana and the courts of his domicile should refuse to entertain his suit for separation and divorce, he would remain a married man without a wife for the balance of his life, and his wife would be entitled, at his death, to one-half of the estate accumulated by him in the meanwhile, contingencies which were foreseen and provided against by the Supreme Court of the United States in Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, in which Yield, J., as the organ of the court, said:

"The state, for example, has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved. One of the parties guilty of acts for which, by the law of the state, a dissolution may be granted may have removed to a state where no dissolution is permitted. The complaining party would therefore fail if a divorce were sought in the state of the defendant; and, if the application could not be made to the tribunals of the complainant's domicile in such case, and proceedings be there instituted without personal service of process or personal notice to the offending party, the injured citizen would be without redress."

Our reconsideration of the case, then, leads us to the conclusions that the defendant, having no other legal domicile than that of her husband, is properly sued here, as at the place of her, and of the matrimonial, domicile, and hence that any judgment that may be herein rendered should be entitled, under the Constitution of the United States, to full faith and credit in the other states of this Union, and, by international law, to recognition in all other jurisdictions; but the learned courts of other states and countries may entertain a different view of that matter, and the question of the recognition of the judgment elsewhere will be determined by them. We further conclude, however, that the plaintiff herein, being a bona fide citizen and resident of the state of Louisiana, is entitled to demand that the courts of this state shall exercise the jurisdiction, which the state has conferred on them, to determine his marital

status within the limits of the state, and that, in the case as presented, he would be entitled to the judgment prayed for irrespective of the fact that he was married in New York; that the cause of action originated there; that the defendant is residing there; and that she has never been, or lived with him, in Louisiana. And this view of the matter, we think, is strengthened by the enactment of the late statute, being Act No. 296 of 1910, which reads:

"That in any action for separation from bed and board or divorce, where the defendant is absent from the state, or in case of reconvention, when the plaintiff is absent from the state; and in actions for divorce based on a judgment of separation from bed and board, when the adverse party is absent from the state, the court having jurisdiction over the cause shall, upon application by any party in interest, appoint a curator ad hoc to represent such absent party, and all proceedings shall be had contradictorily with said curator ad hoc, and any judgment of divorce may be rendered against same curator ad hoc as might be rendered against his principal as if he were present in person in open court."

It is therefore ordered that the judgment appealed from be set aside, and that this case be remanded, to be proceeded with according to law and to the views herein expressed; the costs of the appeal to be paid by defendant, and those of the district court to await the result.

See dissenting opinion of LAND, J., 71 South. 944.